# Newton's Estate.

*Decedents' estates—Federal estate tax—Residuary estate—Act of Congress, Sept. 8, 1916, 39 U. S. Statutes at Large, chap. 463, as amended by Act of March 3, 1917, chap. 159.*

The Federal Estate Tax levied on decedents' estates under the Act of Congress of September 8, 1916, 36 U. S. Statutes at Large, chapter 463, as amended by Act of March 3, 1917, chap. 159, is a charge upon the estate of a decedent and not upon the individual legacies. It is a probate or estate tax levied upon the interest

which ceased by reason of death, and not upon the interest to which some person succeeds on a death. It is a charge upon and payable out of the general revenue of the estate.

The specific and general pecuniary legatees and not the residuary legatees are entitled to the benefit of the exemption from taxation to the amount of $50,000, allowable by the act of Congress. A distinction must be made between a statute which imposes a tax at a uniform rate upon the whole net estate, and one which partially exempts the estate from taxation, and taxes the remainder at a progressive rate which increases in proportion as the net estate increases in size.

The evident intention of Congress was that the tax should be paid by the estate before distribution. The receipt of the collector for the tax entitles the executors to be credited and allowed the amount thereof, by any court having jurisdiction to audit and settle his accounts. After the payment of the proper expenses against the estate, the tax imposed by this statute is an exaction by the sovereign to be taken out of the net estate, and the will, or in case of intestacy, the law of the jurisdiction, comes into operation upon what remains for distribution. The burden of such tax must therefore be borne by the residuary legatees.

Argued October 22, 1919. Appeals, Nos. 103 and 228, Oct. T., 1919, by Osteopathic Hospital, Philadelphia Quarterly Meeting of Friends, specific legatees, and Fidelity Trust Company, James Collins Jones and William M. Graham, Trustees, from the decree of O. C. Phila. County, April T., 1918, No. 583, in Estate of Lillie G. Newton, deceased. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and KELLER, JJ. Reversed.

Exceptions to adjudication. Before GEST, J.

The facts are stated in the opinion of the Superior Court.

After argument before ANDERSON, GUMMEY, GEST and HENDERSON, JJ., the court being evenly divided, the exceptions were dismissed and the adjudication confirmed. GUMMEY, J., concurred with GEST, J. ANDERSON, J., filed a dissenting opinion in which HENDERSON, J., joined.

*Error assigned* was the decree of the court dismissing exceptions.

*Walter C. Longstreth* and *Henry J. Scott,* and with them *Albert J. Hanby,* for pecuniary legatees, appellant. —The federal estate tax is a charge upon the estate of a decedent. It is a probate tax levied on the interest which ceased by reason of death and not upon the individual legacies. In construing statute the court must reject any construction which would make the tax operate unequally, and the residuary estate must consequently bear the burden of the tax: Knowlton v. Moore, 178 U. S. 41; Matter of Hamlin, 226 N. Y. 407; Bate Refrigerating Co. v. Sulzeberger, 157 U. S. 1, 37; Wilson v. Rousseau, 4 How. 646; Bloomer v. McQuewan, 14 How. 539; Quinn's Estate, 66 Pittsburgh Law Journal 198; People v. Pasfield, 120 Northeastern 286; In re Roebling Est., 104 Atlantic 295.

*John Stokes Adams,* for Fidelity Trust Company, trustee, appellant.

Opinion by Porter, J., July 14, 1920:

The testatrix by her will bequeathed pecuniary and specific legacies aggregating $121,006.70 and, by the tenth clause, devised and bequeathed "All the rest, residue and remainder" of her estate to the Fidelity Trust Co. et al., trustees for certain charitable uses. The net estate for distribution, after payment of debts and the collateral inheritance tax, which by the will was directed to be paid out of the residuary estate, amounted to $293,-526.95. The executors of the will had paid the Federal Estate tax, imposed by the Act of Congress approved September 8, 1916, 39 U. S. Statutes at Large, part 1, chap. 463, title II, section 201, page 777, as amended by the Act of March 3, 1917, which amounted to $8,362.46. A question arose as to how the burden of this tax should be borne by, or distributed among, those who took under the will. The court below held that the specific and general pecuniary legacies were entitled to the benefit of the exemption of $50,000 from taxation, allowed by section

203 of the Act of Congress, and, deducting that amount from the gross amount of the specific and pecuniary legacies, found that only $71,006.70 of those legacies should be subjected to the burden and that the balance of the Federal Estate tax must be borne by the residuary legatees. The court, having adopted this basis, decreed that $2,022.91 of the tax should be paid out of the shares of the specific and pecuniary legatees, imposing upon each of the legacies, respectively, the same percentage of the amount thereof. In other words, the $50,000 exemption allowed by the act was apportioned among all the specific and general pecuniary legatees, and so much of such legacies, taken in the aggregate, as exceeded that exemption, were held liable to be taxed at the same rate with the residuary legacies. The Philadelphia Quarterly Meeting of Friends, which under the will received a legacy of $30,000 and the Osteopathic hospital, which received a legacy of like amount, have taken separate appeals from that decree, contending that the entire tax should be paid out of the residuary estate. The Fidelity Trust Company and others, trustees, residuary legatees under the will, also have taken an appeal, contending that the court below erred in holding that the specific and general legatees were entitled to the benefit of the $50,000 exemption from the tax. These three appeals may be properly disposed of by one opinion.

The specifications of error do not question the constitutionality of the act of Congress imposing the tax. It is upon all hands conceded that the levy and collection of some form of death duty is provided by the sections of the law in question. The public contribution which death duties exact is predicated on the passing of property as the result of death, as distinguished from taxes imposed on the property, as such, because of its ownership and possession. It is important to keep in mind that this is a tax imposed by the Congress of the United States. The power of Congress to impose such a tax and the nature of the impost, were so learnedly discussed,

and the principles to be applied in determining where the burden must rest, so clearly stated in the opinion of Mr. Justice WHITE, (now Chief Justice) in Knowlton v. Moore, 178 U. S. 41, that it is not necessary to now enter upon a general discussion of the subject. The opinion in that case repeatedly refers to the distinction between a tax upon the interest to which some person succeeds on a death, that is a legacy or succession tax, and a tax on the interest which ceased by reason of the death, that is, a probate duty, or estate tax. "Probate or estate duty is a tax distinct from taxes imposed upon legacies and the rights of succession, upon receipt of real or personal property." Probate or estate duties, tax the interest which ceased by reason of death, not the interest to which some person succeeds on a death. It is a charge upon and is payable out of the general revenue of the estate. A legacy or succession tax is a charge upon and is collected out of the individual interests upon which it is imposed. "Indeed, the confusion which gives rise to both the constructions of the statute which we have just considered comes from the want of insight pointed out by Hanson in a passage which we have heretofore quoted; that is, it arises from not keeping in mind the distinction between a tax on the interest to which some person succeeds on a death and the tax on the interest which ceased by reason of death, the two being different objects of taxation." "Although different modes of assessing such duties prevail, and although they have different accidental names, such as probate duties, stamp duties, taxes on the transaction, or the act of passing an estate or a succession, legacy taxes, estate taxes or privilege taxes, nevertheless, tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from which the taxing power takes its being and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested." The mere administrative

features of the statute are not controlling. Some statutes may require the duty to be discharged by affixing stamps to inventories or receipts, others may provide that the amount of the tax shall be paid in money, by the executor or administrator. The real question is, does the statute tax the interest which has ceased by reason of death, or the interest to which some other person succeeds upon the death? The opinion in that case reviews the legislation by Congress from the foundation of the government, imposing duties of this nature and shows that death duties of each of the characters referred to had been imposed in the course of that legislation. In the Act of July 1, 1862, there was a tax imposed on legacies or distributive shares of personal property, and in another section of the same act there was imposed a probate duty. "The result of the Act of 1862, therefore, was to cause death duties imposed by Congress to greatly resemble those existing in England; that is, first a legacy tax, chargeable against each legacy or distributive share, and a probate duty chargeable against the mass of the estate."

The act of Congress with which we are now dealing provides: "That a tax equal to the following percentages of the value of the net estate, to be determined as provided in section 203, is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this act, whether a resident or nonresident of the United States: one per centum of the amount of such net estate not in excess of $50,000; two per centum of the amount by which such net estate exceeds $50,-000 and does not exceed $150,000; three per centum of the amount by which such net estate exceeds $150,000 and does not exceed $250,000; four per centum of the amount by which such net estate exceeds $250,000 and does not exceed $450,000"; and continues with increasing rates as the estate increases in value and finally imposes a tax of ten per cent upon the amount by which such net estate exceeds $5,000,000. Section 203 provides

that the value of the net estate shall be determined by deducting from the value of the gross estate such amounts for funeral expenses, administration expenses, claims against the estate,......"and such other charges against the estate, as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered; and an exemption of $50,000." Now the manner of ascertaining the gross estate is provided for by section 202. Under other sections of the statute the executor (which by the terms of the act includes administrators and trustees) is required to file a return of the property which comes into his hands, the value of the gross estate, the deductions allowed, the value of the net estate of the decedent as defined in section 203; and the tax paid or payable thereon. Section 207 requires the executor to pay the tax to the collector or the deputy collector. "The collector shall grant to the person paying the tax duplicate receipts, either of which shall be sufficient evidence of such payment, and shall entitle the executor to be credited and allowed the amount thereof by any court having jurisdiction to audit or settle his accounts." Section 208 provides that in case the tax is not paid within sixty days after it is due, the collector shall, unless there is reasonable cause for further delay, commence proceedings to subject the property of the decedent to be sold under the judgment or decree of the court. "If the tax or any part thereof is paid by, or collected out of that part of the estate passing to or in the possession of, any person other than the executor in his capacity as such, such person shall be entitled to reimbursement out of any part of the estate still undistributed or by a just and equitable contribution by the persons whose interest in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate or whose interest is subject to equal or prior liability for the payment of taxes, debts, or other charges against the estate, it being the

purpose and intent of this title that, so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution." "That unless the tax is sooner paid in full, it shall be a lien for ten years upon the gross estate of the decedent, except that such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration, allowed by any court having jurisdiction thereof, shall be divested of such lien." The provisions of the statute defining the manner in which the value of the gross and net estate of the decedent is to be ascertained, in referring to the property to be considered, repeatedly use the expression "to the extent of the decedent's interest therein."

What particular form of death duty does this statute impose? It is contended on behalf of the residuary legatees that the tax is placed on the passing of the legacies or distributive shares at a progressive rate, the amount of such rate being determined, not by the separate sum of each legacy or distributive share, but by the volume of the whole estate; that the total amount of the tax upon the entire estate of the decedent being ascertained, the burden must be borne by all the legatees, specific, general and residuary, in the proportion which the value of each legacy bears to the value of the whole estate. This would totally disregard the preference which a testator has given to one class of legatees over another, by bequeathing to one a specific legacy, to another a general pecuniary legacy and to a third the residue, or balance of his estate which remains after the satisfaction of other legatees. It must be kept in mind that the statute with which we are now dealing does not impose a tax at a uniform rate upon the whole net estate, making the rate at which the tax is to be levied dependent upon the value of the entire net estate. Thus, it does not say that when the value of the net estate is $100,000 it shall pay a tax at the rate of four per cent and when the value of the estate is $1,000,000 it shall pay a tax of ten per

cent upon the entire net estate. The statute, on the contrary, says that $50,000 of the net estate shall be exempt from taxation, and that the tax shall be levied upon the next $50,000 which passes under the will or the intestate laws at a given rate, that the tax upon the next $100,000 which passes under the will shall be at a fixed rate, which is higher; then the next $100,000 shall pay at a still higher rate, and so at a progressive rate upon each specific sum by the statute fixed. Even if the statute were to be construed as imposing a tax upon each particular legacy, it would seem that Congress having imposed a less burden upon the sums first passing, the legatees who have been preferred by the testator and are entitled to be first paid should have the advantage of the lower rate of taxation which the Congress gave to the sums first to be distributed. The contention of the residuary legatees is equivalent to saying that the specific and definite pecuniary legacies shall be taxed, but that the rate of the tax is to be determined not by the value of those legacies, but that it is dependent upon the amount which the residuary legatees receive. If this contention is correct gross inequalities must inevitably result. Thus, a person dying, leaving a net estate of $50,000, bequeaths it to a hospital. The legacy would not be subject to a tax. Another person dying at the same time, leaves a net estate of $10,000,000, and bequeaths $50,000 of it to the same institution, and the entire residue of his estate to another institution. The hospital would, in that case, be required to pay a tax, at a high rate, upon this $50,000, for the reason that the residuary legatee had received a very large amount of money. It would thus come to pass that the same person, occupying the same relation, and taking in the same character, two equal sums from two different persons, would pay nothing in one case and tax at a high rate in the other. When a particular construction of a statute will thus occasion great inconvenience or produce inequality and injustice, that view is to be avoided if an-

other and more reasonable interpretation is present in
the statute: Bate Refrigerating Co. v. Sulzeberger, 157
U. S. 1; Knowlton v. Moore, supra. Even, therefore, if
we were convinced that this statute imposed a tax upon
each particular legacy, we are of opinion that the lega-
cies which are to be paid in the regular order of preced-
ence indicated by the will, should in the same order
bear the burden of the graded tax imposed by the act
of Congress, those legacies entitled to a preference under
the will to have the benefit of a lower rate of taxation
provided by the statute. In Knowlton v. Moore, supra,
it was suggested, in the opinion of the court, that there
might be doubt whether the taxation by Congress of the
property of one person, accompanied with an arbitrary
provision that the rate of tax shall be fixed with refer-
ence to the sum of the property of another, would not
transcend the limitations arising from those funda-
mental conceptions of free government which underlie
all constitutional systems. The court held, however,
that the question did not arise in that case and ex-
pressed no opinion as to how it should be decided. The
residuary legatees were not entitled to the benefit of the
exemption of $50,000 of the net estate from taxation.
Their contention received, at least, all the consideration
to which it was entitled in the court below.

We come now to the consideration of the appeal of
the pecuniary legatees, whose contention is that the en-
tire burden of the tax should be borne by the residuary
legatees. If the tax imposed by the statute is on the
interest of the testatrix which ceased by reason of her
death, and not upon the particular legacies, then the con-
tention of the pecuniary legatees must be sustained. On
the very threshold the theory that the tax is on the par-
ticular legacies or distributive shares and not upon the
interest of the testator, which ceased by death, is re-
butted by the heading, which describes the tax, not as a
tax upon legacies or distributive shares, but an "Estate
Tax." "This, whilst not conclusive, is proper to be con-

sidered in interpreting the statute": Knowlton v. Moore, 178 U. S. 65. The sections of the statute hereinbefore quoted indicate, beyond all question, that it was the intention of Congress to impose the tax upon the entire net estate of every decedent dying after the passage of the act. The tax, it is true, was made a lien upon all the property of the gross estate, without regard to any disposition of it that might be made by the will of a testator, but that was an administrative feature introduced for the purpose of making certain the payment. The provisions of section 208 made it the duty of the collector to collect the tax out of the property, and rendered any of the property liable to be sold, but it expressly provided that in case the tax is paid by or collected out of that part of the estate passing to or in possession of any person other than the executor in his capacity as such, such person should be entitled to reimbursement out of any part of the estate still undistributed. In case the estate has been distributed then the person paying, or out of whose property the tax has been collected, was given the right to enforce contribution by the persons "whose interest in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate," "or whose interest is subject to equal or prior liability for the payment of taxes, debts or other charges against the estate." And then follows the explicit declaration of the intent that, "unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before distribution." There was here a clear recognition by the Congress that the tax imposed by the statute was not a tax upon each particular legacy; that there might, as between legatees, be different orders of liability for the burden imposed; that the interest of some of those who received might be subject to equal liability, while there might be a prior liability upon the part of others, and the liability for the tax is by the statute assimilated to that for the payment of debts or other

charges against the estate. The right of the testator to impose conditions upon the objects of his bounty, by directing that a particular legatee or class of legatees shall pay the tax is recognized, but, in the absence of such direction by the will, it was clearly the intention of Congress that the tax should be paid by the estate before distribution. The receipt of the collector for the tax entitles the executor to be credited and allowed the amount thereof by any court having jurisdiction to audit and settle his accounts. When the funeral expenses, costs of administration, claims against the estate, and such other charges as are allowed by the laws of the jurisdiction, have been paid, the tax imposed by this statute is an exaction by the sovereign, to be taken out of the net estate, and the will, or in case of intestacy, the law of the jurisdiction, comes into operation upon what remains for distribution. It is a tax upon the interest which ceased by reason of the death of the person whose property it was. The will of Lillie G. Newton contained no direction that the burden of the tax should be borne by any particular legatee or class of legatees. It follows, therefore, that the tax must be paid out of the general funds of the estate. It is the general rule that failing any testamentary provision to the contrary, debts, charges and all just obligations upon an estate must result in a reduction of the interest of the residue of that estate. The benefaction conferred by the residuary clause of a will is only of that which remains after the specific and general pecuniary legacies have been satisfied. The burden of the tax must in this case be borne by the residuary legatees. The views which we have here expressed are in harmony with the decisions in other jurisdictions: Plunkett v. Old Colony Trust Co., 124 North Eastern Reporter 265, decided by the Supreme Court of Massachusetts; in Matter of Hamlin, 226 N. Y. 407.

The decree of the court below is reversed and the record is remitted with direction to make distribution in

361, (1920).]      Opinion of the Court.

accordance with this opinion; and it is ordered that the costs of the appeals Nos. 103, 136 and 228 be paid by the residuary legatees.