ELMER ERICSON ET AL., EXECUTORS (ESTATE OF JANE C. CHILDS) *v.* STARLING W. CHILDS ET ALS., TRUSTEES.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued January 7th—decided March 2d, 1938.

*Robbins B. Stoeckel,* and *Orlando B. Willcox* of New York, for the plaintiffs.

*Albert H. Barclay,* for Starling W. Childs et als., trustees.

*Farwell Knapp,* for Barbara Lawrence.

*William W. Hoppin, Jr.,* for Starling W. Childs, Jr., et als.

*H. Roger Jones,* for James F. Lawrence, guardian ad litem.

*Cyril Coleman,* with whom, on the brief, were *Edward H. Day* and *Julius G. Day, Jr.,* for Starling W. Childs, Jr., guardian ad litem, et als.

MALTBIE, C. J. This reservation raises the general question whether or not some portion of the federal and state estate and succession taxes levied upon the basis of an inter vivos trust established by Jane Childs, late of Norfolk, and upon the basis of the estate left by her at her death and disposed of by her will, should be borne by the trust estate. In January, 1922, Mrs. Childs gave to trustees securities of an estimated value at the time the stipulation for a reservation was filed of about $2,470,000. In the agreement Mrs. Childs reserved the right "during her lifetime" to modify or alter its provisions in whole or in part or to add to or take from the securities comprising the trust estate or any part of it. The agreement provided that during her life the net income should be paid to her; that after her death the income should be paid to her four children or the children of any who died, until the death of the longest living of her children and until the youngest living of the lawful issue of such children became twenty-one, when the principal was to be distributed among her children and the children of any that had died, with other provisions as to the distribution of the principal of the fund adapted to meet various contingencies that might arise. The trust agreement contained this provision: "The trustees are authorized and empowered to pay any and all proper costs, charges, and expenses arising hereunder including taxes and counsel fees, and if any of the trustees be a practicing lawyer he may be employed and compensated as counsel for the trustees."

When Mrs. Childs died she left an estate estimated at the time the stipulation for a reservation was filed at about $2,240,000. In her will, after disposing of her real estate and making a few bequests, she directed that the residue of her estate should be divided into

certain shares or portions which were to constitute trust funds for her children and the children of any child that had died, with provisions not greatly dissimilar to those in the trust agreement, except that the shares were not given in the same proportions. The concluding clause of the will was as follows: "I direct that all taxes and imposts, Federal or State, which may become due upon or in respect to my estate or any of the bequests of this my will, be paid from my residuary estate and considered as part of the general expenses of the administration thereof."

The amount of the taxes due to the federal government or to the State have not been paid or even finally determined. The parties have stipulated, however, that the questions included in the reservation are bound to enter into the final determination of the rights of the parties and that their present determination is in the interest of simplicity, directness and economy of judicial action; and that this is so seems self-evident. Under the terms of the trust agreement there would seem no doubt that the value of the trust funds will be included in the computation of the federal estate tax upon the estate of Mrs. Childs. *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, 49 Sup. Ct. 123; and that in the computation of the succession and estate taxes due the State of Connecticut the trust estate would also be included. *Blodgett* v. *Guaranty Trust Co.*, 114 Conn. 207, 158 Atl. 245; *Hackett* v. *Bankers Trust Co.*, 122 Conn. 107, 187 Atl. 633.

The act of Congress makes the federal estate tax payable by the executor of an estate. U. S. C. A., Title 26, § 422 (b). It also provides that if not paid by him on or before the date it is due it may be collected by the sale of any property of the decedent and if it is collected out of any part of the estate

which has passed to or is in the possession of any person other than the executor, that person is entitled to reimbursement out of any part of the estate still undistributed or "by a just and equitable contribution by the persons whose interest in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate or whose interest is subject to equal or prior liability for the payment of taxes, debts, or other charges against the estate;" and, further, that if any part of the gross estate consists of the proceeds of policies of insurance upon the life of the decedent receivable by a beneficiary other than the executor, the latter shall be entitled to recover from the beneficiary such portion of the total tax paid as the proceeds, in excess of $40,000, of such policies bear to the net estate. U. S. C. A., Title 26, § 426 (b), (c). Except for these provisions, neither of which are applicable here, the act of Congress in no way apportions the tax as regards beneficiaries of the estate or provides that an executor may impose its burden upon or secure reimbursements from any particular property or person.

The contention of all the parties before us, except certain who appear in the interest of minor or unborn grandchildren of Mrs. Childs, is that the trust estate is obligated to bear a fair proportion of the federal estate tax which will have to be paid by the executor on account of the property constituting the trust fund, and one of the principal issues argued before us is whether this would be legal under the terms of the act of Congress. As the executors must clearly pay the tax in the first instance, the question really is whether they are entitled on behalf of the estate to be reimbursed for a portion of that tax from the trust fund, and the equitable principle to which they appeal is that where one pays a debt the obligation of which

rests upon another, the former is entitled to reimbursement. *Bailey* v. *Bussing,* 28 Conn. 455, 462; *Post* v. *Gilbert,* 44 Conn. 1, 14; *Farmers' Loan & Trust Co.* v. *Winthrop,* 238 N. Y. 488, 498, 144 N. E. 769.

Had Mrs. Childs in the trust agreement unequivocally directed that the trustees should pay a proportionate share of any federal tax which might be levied at her death in the computation of which the securities constituting the trust fund should be included, there seems little room for question, assuming that there is nothing in the federal law to prevent, that the executors would be entitled to reimbursement from the trust fund for such proportion of the federal estate tax. But she did not do this. She "authorized and empowered [the trustees] to pay any and all proper costs, charges, and expenses arising hereunder including taxes and counsel fees." Under this provision the trustees no doubt would be authorized to pay such costs and charges as might properly be incurred in administering the trust, as well as such taxes as might be levied upon the trust fund or upon its income, for such charges would be included in the phrase "arising hereunder." But the terms of the provision in question are not at all apt to impose upon the trustees an obligation which does not have its source in the performance of their duties under the agreement or is not founded upon the existence of the fund as such.

As we pointed out in *Blodgett* v. *Guaranty Trust Co.,* supra, 217, the federal estate tax is one "upon the transfer of, rather than the succession to, property of the decedent." " 'The tax is on the act of the testator not on the receipt of property by the legatees.' " *Ithaca Trust Co.* v. *United States,* 279 U. S. 151, 155, 49 Sup. Ct. 291. "It comes into existence before and is independent of the receipt of the property by the

legatee." *Edwards* v. *Slocum,* 264 U. S. 61, 62, 44 Sup. Ct. 293. In *Reinecke* v. *Northern Trust Co.,* supra, 347, wherein it was held that trusts inter vivos were to be included in the computation of the federal estate tax where the testator reserved a right to terminate the trust at any time before his death, the court said: "In its plan and scope the tax is one imposed on transfers at the death or made in contemplation of death and is measured by the value at death of the interest which is transferred." In sustaining the levy of an income tax upon the income of a fund given in trust to pay the income to the settlor's wife, the remainder over to their children, where the settlor reserved the power to alter or abolish the trust at will, the court, after referring to cases involving the imposition of estate taxes, said: "Still speaking with reference to taxation, if a man disposes of a fund in such a way that another is allowed to enjoy the income which it is in the power of the first to appropriate it does not matter whether the permission is given by assent or by failure to express dissent. The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not." *Corliss* v. *Bowers,* 281 U. S. 376, 378, 50 Sup. Ct. 366.

In *Milliken* v. *United States,* 283 U. S. 15, 23, 51 Sup. Ct. 24, the court said, speaking of trusts inter vivos which were held to be within the contemplation of the federal estate tax: "It is sufficient for certain purposes, that such gifts are motivated by the same considerations as lead to testamentary dispositions of property, and made as substitues for such dispositions without awaiting death, when transfers by will or inheritance become effective. Underlying the present statute is the policy of taxing such gifts equally with

testamentary dispositions, for which they may be substituted, and the prevention of the evasion of estate tax by gifts made before, but in contemplation of, death. It is thus an enactment in aid of, and an integral part of, the legislative scheme of taxation of transfers at death." In *Heiner* v. *Donnan*, 285 U. S. 312, 322, 52 Sup. Ct. 358, the court said: "The value of property transferred without consideration and in contemplation of death is included in the value of the gross estate of the decedent for the purposes of a death tax, because the transfer is considered to be testamentary in effect." In *Porter* v. *Commissioner of Internal Revenue*, 288 U. S. 436, 444, 53 Sup. Ct. 451, the court said: The testator's "death terminated that control, ended the possibility of any change by him, and was, in respect of title to the property in question, the source of valuable assurance passing from the dead to the living. That is the event on which Congress based the inclusion of property so transferred in the gross estate as a step in the calculation to ascertain the amount of what in § 301 is called the net estate. Thus was reached what it reasonably might deem a substitute for testamentary disposition."

The federal tax is then one which is imposed upon the transfer which takes place at death. The inclusion in the computation of the amount due of the value of property given in trust inter vivos before death is based upon the fact that the trust is in the nature of a testamentary disposition and is therefore regarded as a part of the transfer that takes place at death. The tax is not one upon the trust fund or its income. Indeed, if, instead of setting the securities apart as a trust Mrs. Childs had retained them, they would be included in the computation of the federal tax in just the same way. The setting up of the trust cannot well be regarded as in any sense the source of

the tax. Such a tax does not in any real sense arise under the trust agreement and is not included in the provision giving the trustees the authority to pay taxes "arising hereunder."

While the trust agreement reserved to Mrs. Childs the right "during her lifetime" to modify or alter its provisions or revoke the trust, she did not reserve the right to do this by will which speaks at her death. But even if she did have the right by her will to revoke or modify the terms of the trust so as to impose upon it the obligation to pay a part of the federal estate tax she has not evinced in it an intent to do so. The provision in which she directs that all taxes "which may become due upon or in respect to my estate or any of the bequests of this my will" be paid from the residuary estate certainly cannot be given such a construction. As is pointed out in *Y. M. C. A.* v. *Davis,* 264 U. S. 47, 51, 44 Sup. Ct. 291, it was within the power of Mrs. Childs to place the burden of a portion of the estate tax upon the trust fund if she chose. "It must be presumed when she failed to exercise the power, that she intended the incidence of the tax to be where otherwise by law it must be and therefore, that it was her purpose that her residuary legatees were to receive all that was left after paying all charges, including this tax, out of her estate." In *Farmers' Loan & Trust Co.* v. *Winthrop,* 238 N. Y. 488, 144 N. E. 769, it was held that a direction in a will that "all inheritance taxes be paid out of my general estate" did not include estate taxes imposed by reason of an inter vivos trust the testatrix had established before her death; and the court said (p. 493): "We conclude that the testatrix, in drawing her will, has not indicated she had in mind any question of who should pay any tax imposed on the transfer of

property passing under a deed of trust executed by her, either before or after the making of the will."

As is well said in an opinion written by Chief Justice Rugg in *Bemis* v. *Converse,* 246 Mass. 131, 134, 140 N. E. 686: "It is strongly argued that the intention of the settlor and testator cannot have been that the entire burden of a tax of this nature should fall upon his estate and the property held under the trust deed be completely exonerated. Courts cannot speculate concerning the intention of settlors and testators as to where they intend the burden of taxes to rest. The instrument as written must govern. Opportunity is freely open in framing trust deeds and wills to make full and accurate expression of desire and intention respecting the payment of taxes and the particular beneficiaries whose shares shall be exonerated from or bear that pecuniary exaction for the support of government. Specific provision on this point is familiar in wills and is not infrequently found in other instruments. In the absence of a definite declaration on the subject it must be presumed that the intention was that the ultimate weight of taxation must rest where the law places it. It cannot be presumed that anything else was intended than what is stated in the written instrument. It may be, for aught that now can be known, that the precise result which has happened was intended. There is no jurisdiction in equity to prescribe what may seem fairer than the settlor or testator has declared. To do that is as foreign to chancery principles as to remold a will in order to make it conform to different conceptions of justice or fairness from those indulged by the testator."

In *Central Trust Co.* v. *Burrow,* 144 Kan. 79, 58 Pac. (2d) 469, it was held that where the will of the testator contained no direction as to the payment of taxes, a donee of gifts made in contemplation of death

was not obliged to reimburse trustees under the will for any portion of a federal estate tax upon the estate in the computation of which the gifts were included. The decision of *Gaede* v. *Carroll,* 114 N. J. Eq. 524, 169 Atl. 172, in which it was held that the widow of a decedent was bound to reimburse his estate for federal estate taxes paid on account of the proceeds of life insurance policies and property held by her and the decedent as tenants in the entireties, appears to have been based upon the particular provisions of the will involved (p. 533); and in the later case of *Turner* v. *Cole,* 118 N. J. Eq. 497, 179 Atl. 113, the same court held that in the absence of a direction in the will or a statute, the federal estate tax was payable from the estate before distribution and the burden of it could not be placed upon the beneficiaries. See also *Plunkett* v. *Old Colony Trust Co.,* 233 Mass. 471, 124 N. E. 265; *Matter of Hamlin,* 226 N. Y. 407, 124 N. E. 4; note, 7 A. L. R. 708; *Woodruff* v. *Holmes,* 328 Mo. 143, 149, 40 S. W. (2d) 616. A different conclusion has been reached in New Hampshire, where it is held that in the absence of a provision in the will the burden of the federal estate tax should be apportioned among the beneficiaries of the estate; *Fuller* v. *Gale,* 78 N. H. 544, 546, 103 Atl. 308; *Williams* v. *State,* 81 N. H. 341, 355, 125 Atl. 661; *Foster* v. *Farrand,* 81 N. H. 448, 450, 128 Atl. 683; the only reason given for this conclusion is stated in the *Williams* case: "If the will is silent upon the subject, it can be inferred the testator in this respect wished his property distributed as if no will had been made;" and this is hardly a sufficient answer to the reasons which support a contrary conclusion. In *Hampton's Admrs.* v. *Hampton,* 188 Ky. 199, 221 S. W. 496, the decision reached a result similar to that in the New Hampshire cases, but it was based upon a presumed

intent found in the federal estate tax law, that there should be an apportionment of the tax burden, an intent which we cannot find in the act.

There is no basis in this case upon which we can find an intent on the part of Mrs. Childs that the ultimate burden of any part of the federal estate tax should be borne by the trust and hence no basis upon which the executors can claim reimbursement.

The state succession tax presents a very different situation. In *Hackett* v. *Bankers Trust Co.*, supra, a case in which the question whether certain trusts inter vivos should be charged with the payment of succession taxes levied on account of them, we said (p. 126): "Under our statutes, in the absence of different direction in a will, taxes upon transfers of property made by a decedent during his lifetime are to be paid from the property passing thereby to the donee or beneficiary. They are payable primarily by the executor of the will or the administrator of the estate, but with a right and duty to collect the tax from the donee or beneficiary or, in the case of a trust, from the trustee." General Statutes, § 1388, amended Cum. Sup. 1935, § 499c; § 1396, amended Cum. Sup. 1935, § 501c. The question, then, as regards the succession taxes payable to the State of Connecticut is, did Mrs. Childs by the provision in her will we have quoted intend to alter this rule and provide that so much of the tax as was imposed upon the trust fund should be paid from the residue of the estate passing under the will. While the provision before us differs somewhat from that involved in *Hackett* v. *Bankers Trust Co.*, supra, what we there said is largely applicable here. We there quoted (p. 127) from *Sherman* v. *Moore*, 89 Conn. 190, 193, 93 Atl. 241, as follows: "As the practical effect of a provision making a legacy or devise free of taxes is to increase the gift, and to

shift the burden which the legacy or devise would ordinarily bear on to the shoulders of the residuary beneficiaries, the intent of the testator to make such a gift will not be drawn from vague or uncertain language." Here, as in the *Hackett* case, the provision taken by itself could be construed to place upon the residuary estate the burden of the tax upon the trust fund. There is, however, as bearing upon the testatrix's intent, significance in the use of the words "my estate." The will contains no reference to the trust fund or to any other property except that which passes under its provisions. It uses the same words "my estate" in the provision establishing the trusts in the residuary estate as referring solely to property passing under the will. We cannot believe that Mrs. Childs in making the provision concerning the payment of taxes "upon or in respect to my estate" had at all in mind the tax which is imposed by the state succession tax law upon the trust fund. It follows that the executors must in the first instance pay the tax but that they are entitled to reimbursement from the trust fund.

The remaining question concerns the so-called estate tax imposed by Chapter 77A of the General Statutes, Cum. Sup. 1935. The federal tax law permits certain deductions to be made from the tax provided in it; the first two are gift taxes payable under the revenue acts of 1924 and 1926; then follows a provision that the tax imposed by the federal law shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State, territory or the District of Columbia, in respect to any property included in the gross estate, but with a limitation that this credit shall not exceed 80 per cent. of the federal tax, after deducting the gift taxes previously referred to. To the extent that

a state succession tax falls short of that 80 per cent. the federal tax would be imposed upon the estate. If an increase in the amount of the state tax were made so that it would amount to that 80 per cent. this would take the place of the federal tax, without in any way increasing the general tax burden upon the estate; and the State would gain in revenue thereby. Accordingly, the Legislature established the state estate tax in these terms: "A tax is imposed upon the transfer of the estate of each person who at the time of death was a resident of this state, the amount of which shall be the amount by which eighty per cent. of the estate tax payable to the United States under the provisions of the federal revenue act in force at the date of such decedent's death shall exceed the aggregate amount of all estate, inheritance, legacy, transfer and succession taxes actually paid to the several states and territories of the United States, including this state, in respect to any property owned by such decedent or subject to such taxes as a part of or in connection with his estate." It is further provided that the tax shall become due at the date of the taxable transfer and payable, subject to extensions of time, at the expiration of eighteen months from the date of death, "and executors, administrators, trustees, grantees, donees, beneficiaries and surviving joint owners shall be liable for the tax until it is paid;" § 503c; that the tax commissioner shall determine and assess the tax, subject to appeal, upon the basis of the returns made for the succession tax; § 505c; that "all necessary administrative provisions" of the succession tax law shall apply, except that there shall be no lien upon any property of the estate; § 506c; and that "if the tax or any part thereof shall be paid by, or collected out of that part of the estate passing to or in the possession of, any person other than the ex-

ecutor or administrator in his capacity as such, such person shall be entitled to reimbursement out of any part of the estate still undistributed or to a just and equitable contribution by the persons whose interest in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate or whose interest is subject to equal or prior liability for the payment of taxes, debts or other charges against the estate." § 508c.

In this chapter is found no such provision as that contained in the succession tax law that "in the absence of a provision in the will charging the tax imposed by the provisions of this chapter to the residuary estate or to some particular fund, an executor, administrator or trustee receiving property, the transfer of which is subject to the tax imposed by this chapter, shall not deliver such property to the transferees without retaining a sufficient portion thereof to pay the tax or, in the case of a specific legacy, without collecting the tax from the transferees. The executor of a will or an administrator of an estate shall collect the tax due upon the transfer of all property which belonged to the transferor and the taxes due upon the transfers of property made by the transferor during his life." General Statutes, § 1396, amended Cum. Sup. 1935, § 501c. On the other hand, the provision for reimbursement contained in § 508c, is in the same language as a section of the federal estate tax law, U. S. C. A., § 426 (b), and it leaves little room for doubt that the tax imposed by the chapter is one upon the transfer of, and not the succession to, the property of the decedent, the burden of which, as in the case of a federal estate tax, rests upon the estate as a whole and not upon a particular interest of any beneficiary. The same

reasons for holding that the executors are not entitled to be reimbursed from the trust for any portion of the federal estate tax applies to this state tax as well.

Our conclusion is that the trust fund is liable to reimburse the executors only as regards the Connecticut succession tax. That is a tax which falls within the provision of the trust agreement authorizing and empowering the trustees to pay the taxes "arising hereunder." The amount of such reimbursement would be the total amount taxed against the beneficial interests in the trust fund. These amounts will be determined by the tax commissioner upon a proper return made to him, subject to review by the Court of Probate and an appeal from its decree if one is taken. General Statutes, § 1384, amended Cum. Sup. 1935, § 498c.

Questions in a reservation should be so stated that each will present a definite point of law and that the court may give to each a categorical or very definite answer. Those before us in this case are somewhat repetitious, in many respects are not definite and reach beyond the scope of the issues included in the briefs and arguments of counsel. We confine our answers to the issues which have been sufficiently discussed fairly to inform us of the respective claims of the parties.

To subdivision (a) of the first question, asking whether the Connecticut succession tax should be prorated and, if so, how and what proportions of said tax should be borne by the respective parties, we answer: "The executors of Mrs. Childs' estate are entitled to receive from the trust fund the amount of any succession tax imposed upon the interests of the beneficiaries under the trust agreement." To subdivisions (b) and (c) of the first question, asking similar questions as to the Connecticut estate tax and the federal

estate tax, we answer: "No." The other questions we do not answer.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.